**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:

TRIGEANT HOLDINGS, LTD., *et al.*,                  Chapter 11 Case

                                                    Case No. 14-29027 (EPK)
                                                    (Jointly Administered)

                        Debtor.
_____/


In re:                                              Chapter 11 Case

TRIGEANT, LTD.,                                     Case No. 14-30727 (EPK)
                                                    (Joint Administration Pending)

                        Debtor.
_____/

**DEBTORS' JOINT PLAN OF REORGANIZATION UNDER**
**CHAPTER 11 OF THE BANKRUPTCY CODE**



Dated:  September 16, 2014


BERGER SINGERMAN LLP
Jordi Guso, Esq.
Isaac M. Marcushamer, Esq.
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel: (305) 755-9500
Fax: (305) 714-4340

Counsel for Debtors and
Debtors-in-Possession

# TABLE OF CONTENTS

**Page**

ARTICLE I    DEFINITIONS; RULES OF INTERPRETATION ................................... 1

    1.1.    Scope of Definitions .......................................................................... 1

    1.2.    Definitions .......................................................................................... 1

    1.3.    Interpretation .................................................................................... 11

    1.4.    Exhibits .............................................................................................. 12

ARTICLE II    PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE
EXPENSE CLAIMS, DIP LOAN CLAIMS, PRIORITY TAX CLAIMS
AND STATUTORY FEES ............................................................................. 12

    2.1.    Payment of Allowed Administrative Expense Claims; Administrative
Expense Claims Bar Date .................................................................. 12

    2.2.    Professional Claims Bar Date .......................................................... 12

    2.3.    DIP Loan Claims .............................................................................. 12

    2.4.    Priority Tax Claims .......................................................................... 12

    2.5.    U.S. Trustee; Claims for Statutory Fees; Quarterly Reports ............ 13

ARTICLE III    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...................... 13

    3.1.    Generally ........................................................................................... 13

    3.2.    Summary ............................................................................................ 13

ARTICLE IV    IMPAIRMENT AND TREATMENT  OF CLAIMS AND EQUITY
INTERESTS ................................................................................................ 14

    4.1.    Class 1 ............................................................................................... 14

    4.2.    Class 2 ............................................................................................... 14

    4.3.    Class 3 ............................................................................................... 15

    4.4.    Class 4 ............................................................................................... 15

    4.5.    Class 5 ............................................................................................... 16

    4.6.    Class 6 ............................................................................................... 16

    4.7.    Class 7 ............................................................................................... 17

    4.8.    Class 8 ............................................................................................... 17

    4.9.    Class 9 ............................................................................................... 18

ARTICLE V    ACCEPTANCE, REJECTION, AMENDMENT AND  REVOCATION
OR WITHDRAWAL OF THE PLAN ............................................................. 18

    5.1.    No Classes Entitled to Vote ............................................................. 18

    5.2.    Nonconsensual Confirmation ........................................................... 18

    5.3.    Revocation or Withdrawal; No Admissions ..................................... 18

# TABLE OF CONTENTS

**Page**

5.4.     Amendment of Plan Documents ................................................. 19

ARTICLE VI  MEANS OF IMPLEMENTING THE PLAN ................................. 19

6.1.     Sale to Buyer ................................................................. 19

6.2.     Sale is Free and Clear ....................................................... 19

6.3.     Source of Funding for Plan Distributions .................................. 19

6.4.     Section 1146 Exemption ....................................................... 19

6.5.     Corporate Action .............................................................. 19

6.6.     Vesting of Assets in the Reorganized Debtors .............................. 20

6.7.     Distributions .................................................................. 20

6.8.     Continued Corporate Existence of the Reorganized Debtors ................ 20

6.9.     Amendment of the Reorganized Debtors' Governance Documents ............ 20

6.10.    Directors, Officers, Partners, Members and Managers of the Reorganized
         Debtor ......................................................................... 21

6.11.    Effectuating Documents and Further Transactions ......................... 21

6.12.    Preservation of Causes of Action ........................................... 22

6.13.    Prosecution and Settlement of Causes of Action .......................... 23

ARTICLE VII  DISTRIBUTIONS ..................................................... 23

7.1.     Manner of Distributions Under the Plan .................................... 23

7.2.     Timing of Distributions ...................................................... 23

7.3.     Entity Making Distributions ................................................. 23

7.4.     Record Date ................................................................... 24

7.5.     Delivery of Distributions .................................................... 24

7.6.     No Interest Unless Otherwise Provided ..................................... 24

7.7.     De Minimis Distributions ..................................................... 24

7.8.     Fractional Cents .............................................................. 24

7.9.     Taxpayer Identification Number ............................................. 24

7.10.    Compliance with Tax Requirements .......................................... 24

7.11.    Effect of Pre-Confirmation Distributions .................................. 25

7.12.    Setoffs and Recoupments ..................................................... 25

7.13.    Distributions in Satisfaction; Allocation ................................. 25

7.14.    Unclaimed Property ........................................................... 25

ARTICLE VIII   PROCEDURES FOR RESOLVING AND TREATING DISPUTED
         CLAIMS ......................................................................... 25

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| 8.1. | Objections to Claims; Prosecution of Disputed Claims | 25 |
| 8.2. | Administration of Disputed Claims; Disputed Claims Reserve | 26 |
| 8.3. | Estimation | 27 |
| 8.4. | Disallowance of Claims | 27 |
| ARTICLE IX | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 27 |
| 9.1. | General Treatment: Rejected if not Previously Assumed | 27 |
| 9.2. | Bar to Claims Arising from Rejection, Termination or Expiration | 27 |
| 9.3. | Assumption and Assignment of Executory Contracts and Unexpired Leases | 28 |
| 9.4. | Insurance Policies and Agreements | 29 |
| ARTICLE X | CONDITIONS PRECEDENT | 29 |
| 10.1. | Conditions Precedent to Effectiveness of Plan | 29 |
| 10.2. | Effect of Failure of Conditions to Effective Date | 31 |
| 10.3. | Notice of Confirmation of the Plan | 31 |
| ARTICLE XI | EFFECT OF CONFIRMATION | 31 |
| 11.1. | Vesting of Assets | 31 |
| 11.2. | Title to Assets; Discharge of Liabilities | 31 |
| 11.3. | Binding Effect | 32 |
| 11.4. | Discharge of Claims and Termination of Equity Interests | 32 |
| 11.5. | Discharge of the Debtors | 32 |
| 11.6. | Injunction | 32 |
| 11.7. | Term of Injunctions or Stays | 33 |
| 11.8. | Injunction Against Interference With Plan of Reorganization | 33 |
| 11.9. | Exculpation | 33 |
| 11.10. | Releases | 34 |
| 11.11. | Government Releases | 34 |
| 11.12. | Limitations on Exculpation and Releases of and Releases of Representatives | 34 |
| ARTICLE XII | RETENTION OF JURISDICTION | 34 |
| 12.1. | Retention of Jurisdiction | 34 |
| 12.2. | Abstention and Other Courts | 37 |
| ARTICLE XIII | MISCELLANEOUS PROVISIONS | 37 |
| 13.1. | Modification of the Plan | 37 |

iii

# TABLE OF CONTENTS

**Page**

13.2.  Rights of Action ....................................................................................... 37

13.3.  Notices .................................................................................................... 37

13.4.  Severability ............................................................................................ 38

13.5.  Headings ................................................................................................ 38

13.6.  Governing Law ....................................................................................... 38

13.7.  Plan Documents ..................................................................................... 38

13.8.  Compliance with Tax Requirements....................................................... 38

13.9.  Conflict between Plan and Plan Documents ........................................... 38

13.10. Expedited Determination of Postpetition Taxes .................................... 38

13.11. Time ...................................................................................................... 39

13.12. Binding Effect........................................................................................ 39

13.13. No Res Judicata Effect .......................................................................... 39

13.14. Bankruptcy Rule 9019 Request; Impact ................................................ 39

13.15. Cramdown .............................................................................................. 39

13.16. Successors and Assigns.......................................................................... 39

# EXHIBIT LIST

1. Exhibit 1.2(g)- APA
2. Exhibit 1.2(ooo)- Plan Support Agreement

## INTRODUCTION

Trigeant, Ltd. ("Trigeant"), Trigeant Holdings, Ltd. ("Holdings") and Trigeant, LLC ("LLC"; and together with Trigeant and Holdings collectively  the "Plan Proponents" or "Debtors"),  the Debtors in the above-captioned chapter 11 cases, propose this Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (as amended or supplemented from time to time, and including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of, the "Plan"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (as defined in Section 1.2 herein ("Definitions")).

**PURSUANT TO 11 U.S.C. § 1126(f), HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS ARE NOT ENTITLED TO VOTE ON THE PLAN BECAUSE ALL CLASSES OF CLAIMS AND EQUITY INTERESTS ARE UNIMPAIRED UNDER THE PLAN. NOTWITHSTANDING, ALL PARTIES ARE ENCOURAGED TO READ THE PLAN IN ITS ENTIRETY. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I

## DEFINITIONS; RULES OF INTERPRETATION

1.1.    ***Scope of Definitions***.    Except as expressly provided in Section 1.3 herein ("Interpretation"), all capitalized terms used in the Plan, but not otherwise defined, shall have the meanings specified in Section 1.2 herein ("Definitions").

1.2.    ***Definitions***.

(a)    "Administrative Expense Claim" means any Claim constituting a cost or expense of administration in the Debtors' Chapter 11 Cases under section 503 of the Bankruptcy Code, including, without express or implied limitation, any actual and necessary costs and expenses of preserving the Estate of the Debtors, any Professional Claim, any actual and necessary costs and expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors, as Debtors in Possession, in connection with the conduct of their business or for the acquisition or lease of property or the rendition of services, any other allowed compensation or reimbursement of expenses under section 503(b)(2)-(6) of the Bankruptcy Code, and any fees or charges assessed against any Estate under section 1930, chapter 123, title 28, United States Code.

(b)    "Administrative Expense Claims Bar Date" means the date to be fixed by the Bankruptcy Court as the last date for filing Administrative Expense Claims; provided, however, that the Administrative Expense Claims Bar Date shall not apply to (a) Professional Claims or other Persons requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including any compensation requested by any Professional or any

1

other Person for making a substantial contribution in the Chapter 11 Case), (b) liabilities incurred by the Debtors in the ordinary course of business after the Administrative Expense Claims Bar Date but before the Effective Date, or (3) any DIP Loan Claims.

(c)     "Affiliate" means any Person that is an "affiliate" of the Debtors within the meaning of section 101(2) of the Bankruptcy Code.

(d)     "Allowed" means:

(i)     With respect to any Claim (other than an Administrative Expense Claim), of which a proof of claim was properly and timely filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court: (1) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, such Claim to the extent asserted in the proof of such Claim; or (2) as to which an objection has been interposed, such Claim to the extent that it has been allowed in whole or in part by a Final Order, or (3) which has been allowed under the terms of the Plan.

(ii)     With respect to any Claim (other than an Administrative Expense Claim), as to which no proof of claim was filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, such Claim to the extent that it has been listed in the Schedules as liquidated in amount and not disputed, contingent or unliquidated and not otherwise Disputed under the terms of the Plan.

(iii)     With respect to any Interest, of which a proof of interest was properly and timely filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court: (1) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, such Claim to the extent asserted in the proof of such Claim; or (2) as to which an objection has been interposed, such Interest to the extent that it has been allowed in whole or in part by a Final Order, or (3) which has been allowed under the terms of the Plan.

(iv)     With respect to any Interest, which is reflected on the books and records of the applicable Debtor as being an allowed interest.

(v)     With respect to any Claim that is asserted to constitute an Administrative Expense Claim:

(1)     that (y) represents an actual or necessary cost or expense of preserving an Estate or operating the business of any Debtor, including for payment of goods, services, wages, or benefits or for credit extended to any Debtor, as a Debtor in Possession, and (z) to the extent that such claim is reflected as a postpetition liability of any Debtor on the Debtor's books and records maintained in the ordinary course of business as of the Effective Date;

2

(2)    in an action against the Debtor pending as of the Confirmation Date, any such Claim to the extent it is allowed by a Final Order of a court of competent jurisdiction or by agreement between any Reorganized Debtor and the holder of such Administrative Expense Claim, and if any Debtor disputes that such claim is a cost or expense of administration under sections 503(b) and 507(a) of the Bankruptcy Code, to the extent the Bankruptcy Court determines by a Final Order that it constitutes a cost or expense of administration under sections 503(b) and 507(a) of the Bankruptcy Code;

(3)    any such Claim filed to the extent (y) no objection is interposed by the applicable objection deadline, or (z) if an objection is interposed by the applicable objection deadline, is allowed in whole or in part by a Final Order and only to the extent that such allowed portion is deemed, pursuant to a Final Order, to constitute a cost or expense of administration under sections 503(b) and 507(a) of the Bankruptcy Code;

(4)    that represents a Professional Claim, to the extent it is allowed by a Final Order; or

(5)    any such Claim that has been otherwise allowed under the terms of the Plan or by Final Order.

(e)    "AmCap" means American Capital Financial Services, Inc.

(f)    "AmCap Debt" means the Claims originally held by AmCap against any Debtor, including the notes, mortgages, security agreements, pledges and guarantees documents evidencing or giving rise to such Claim, which Claims were acquired by BTB via assignment from AmCap.

(g)    "APA" means the Asset Purchase Agreement attached as Exhibit 1.2(g).

(h)    "Avoidance Action" means a Cause of Action available to any Debtor or its Estate, through the exercise of the powers granted pursuant to sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, other than those Causes of Action barred pursuant to this Plan or to be transferred to Buyer under the APA.

(i)    "Ballot" means the form or forms approved by the Bankruptcy Court and distributed to holders of Impaired Claims and Impaired Equity Interest on which the acceptance or rejection of the Plan is to be indicated.

(j)    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code, as applicable to the Chapter 11 Cases.

(k)    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, or such other court having jurisdiction over the Chapter 11 Cases.

(l)     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

(m)     "Bar Date" means, as applicable, (1) the dates established by the Bankruptcy Court as the last date for filing proofs of claim against the Debtors, (2) the Administrative Expense Claims Bar Date, and (3) any other date(s) established by the Bankruptcy Court as the last date(s) for filing other Claims against the Debtor.

(n)     "Bay/Berry Agreements" has the meaning set forth in the APA.

(o)     "BTB" means BTB Refining, LLC, a Texas limited liability company.

(p)     "Business" has the same definition as in the APA.

(q)     "Business Day" means any day that is not (1) a Saturday, (2) a Sunday, (3) any other day on which commercial banks in Miami, Florida are required or authorized to close by law or executive order, or (4) any other day that is a "legal holiday" in the State of Florida, as such term is defined in Bankruptcy Rule 9006(a).

(r)     "Buyer" means the buyer as identified in the APA.

(s)     "Cash" means lawful currency of the United States of America and its equivalents, including but not limited to, wire transfers and checks.

(t)     "Causes of Action" means any and all claims (including third party claims and Avoidance Actions), choses in action, causes of action, suits, accounts, debts, dues, sums of money, bonds, bills, covenants, contracts, damages, judgments, remedies, rights of setoff, motions, subrogation claims, contribution claims, reimbursement claims, indemnity claims, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, counter-claims and cross claims (including all claims and any avoidance, recovery, subordination or other actions against any Person under the Bankruptcy Code), whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise (including under the Bankruptcy Code), which are owned or held by, or have accrued to, any Debtor, Debtor in Possession and/or any Estate, whether arising before or after the Petition Date (and whether asserted or unasserted as of the Confirmation Date), or instituted by a Debtor or a Reorganized Debtor, as the case may be (after the Petition Date or Effective Date, as applicable), against any Person.  Under the Plan, all Causes of Action, except for those Causes of Action transferred to the Buyer or released pursuant to the APA, will be retained by the applicable Debtor and vest in the applicable Reorganized Debtor.

(u)     "Chapter 11 Cases" means the above-captioned cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on August 25, 2014 and September __, 2014, as applicable, and pending (as jointly administered cases) in the Bankruptcy Court as "In re Trigeant Holdings Ltd.", Case No. 14-29027-BKC-EPK; "In re Trigeant LLC, Case No. 14-29030-BKC-EPK; and "In re Trigeant, Ltd., Case No. 14- 30727-BKC-EPK."

(v)     "Claim" means a "claim", as defined in section 101(5) of the Bankruptcy Code against any Debtor.

(w)     "Class" means any group of Claims or Equity Interests classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

(x)     "Committee" means any committee of unsecured creditors that may be appointed in this Chapter 11 Cases, as such Committee may be reconstituted from time to time. As of the date of the filing of the Plan, no Committee has been appointed in the Chapter 11 Cases.

(y)     "Confirmation" means the entry of an order of the Bankruptcy Court confirming the Plan in accordance with section 1129 of the Bankruptcy Code.

(z)     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket.

(aa)     "Confirmation Hearing" means the hearing(s) before the Bankruptcy Court in respect of the confirmation of the Plan.

(bb)     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(cc)     "Creditor" means any Person that holds an Allowed Claim.

(dd)     "Cure" means a Claim for all unpaid monetary obligations, or adequate assurance of cure or compensation, or other amounts as may be agreed upon by the parties, under an executory contract or unexpired lease (or assumed or assumed and assigned) by any Debtor pursuant to section 365 of the Bankruptcy Code or the Plan.

(ee)     "Cure Claim" means a Claim for a Cure. All Allowed Cure Claims will be paid from the Purchase Price.

(ff)     "Debtor" has the meaning set forth in the preamble hereof.

(gg)     "Debtor in Possession" means the applicable Debtor in its capacity as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(hh)     "DIP Guarantors" means Harry Sargeant, Jr., Janet Sargeant, and Daniel Sargeant, each in their individual capacities.

(ii)     "DIP Lender" means Gulf Coast Asphalt Company, L.L.C., including its designees, successors and assigns, pursuant to the DIP Note.

(jj)     "DIP Loan" means the borrowings by, and other extensions of credit provided to, the Debtors pursuant to the DIP Note, the DIP Loan Order, and the other DIP Loan Documents.

(kk)     "DIP Note" means the Debtor-in-Possession Promissory Note, dated as of September 16, 2014, together with all amendments, modifications and supplements thereto.

(ll)     "DIP Loan Claims" means all Claims arising under or related to the DIP Loan or any of the DIP Loan Documents.

(mm)    "DIP Loan Collateral" means the Collateral subject to the Lien under the DIP Loan Documents.

(nn)    "DIP Loan Documents" means the DIP Note, together with all other documents and orders related to any of the DIP Loan and DIP Loan Claims, including, to the extent relating to any of the foregoing, the related Guaranties and the DIP Loan Order, and any and all other amendments, supplements, or modification to the foregoing.

(oo)    "DIP Loan Motion"  means the Debtors' Emergency Motion, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), and 364(e), and Fed. R. Bankr. Pr. Rules 2002, 4001 and 6004 (I) Authorizing the Debtors to Obtain Postpetition Financing, and (II) Scheduling Final Hearing filed on September 16, 2014, appearing on the docket of the Chapter 11 Case of Trigeant as ECF No. ____.

(pp)    "DIP Loan Order" means the Final Order entered on _____, 2014, approving the DIP Loan Motion and appearing on the docket of the Chapter 11 Case of Trigeant as ECF No. _____.

(qq)    "Disallowed" or "Disallowed Claim" means a Claim, or any portion of a Claim that (a) is scheduled in the Debtor's Schedules in the amount of zero ($0) U.S. dollars or as contingent, unliquidated or disputed and as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; (b) is not scheduled in the Debtor's Schedules and as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (c) has been disallowed by order of the Bankruptcy Court or such other court of competent jurisdiction.

(rr)     "Disputed" or "Disputed Claim" means any Claim (including any Administrative Expense Claim) against a Debtor:

1.      If no proof of claim was timely and properly filed by the applicable Bar Date: (a) a Claim that has been or hereafter is listed on the Schedules as unliquidated  in amount or is shown as disputed, contingent or unliquidated; or (b) a Claim that has been or hereafter is listed on the Schedules as liquidated in amount and not disputed, contingent or unliquidated, but as to which a Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by Final Order; or

2.      If a proof of claim was timely and properly filed by the applicable Bar Date, a Claim (a) for which no corresponding Claim has been or hereafter is listed on the Schedules; or (b) that has been or hereafter is listed on the Schedules as unliquidated in amount or is shown as disputed, contingent or unliquidated; or (d) for which a corresponding Claim has been or hereafter is listed on the Schedules as liquidated in amount and not shown as disputed, contingent or

6

unliquidated, but the nature and amount of the Claim as asserted in the proof of claim varies from the nature and amount of such claim listed on the Schedules; or (e) which is otherwise disputed under the Plan or as to which the Debtor have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order.

A Claim that is disputed by any Debtor as to its amount only shall be deemed Allowed in the amount the Debtor admits owing in writing, if any, and disputed as to the excess.

(ss)    "Disputed Claims Reserve" means a reserve to be established by the Debtors or the Reorganized Debtors (or their respective agent(s)), as the case may be, to receive and hold, in a segregated account, Cash in an amount equal to the aggregate of amounts thereof or such other amounts as the parties may agree or the Bankruptcy Court may order, that would have been distributed on the Effective Date on account of such Disputed Claims against the applicable Debtor or its property (had they been Allowed Claims on the Effective Date).

(tt)    "Distribution" means each payment or distribution under the Plan of property or interests in property to the holders of Allowed Claims.

(uu)    "Distribution Agent" means the Person or Entity responsible for making Distributions under the Plan, as identified in the Plan Supplement, and which may be one of the Reorganized Debtors.

(vv)    "Effective Date" means a Business Day on or after the Confirmation Date selected by the Plan Proponents on which (a) all of the conditions precedent to the effectiveness of the Plan specified in Section 10.1 hereof ("Conditions Precedent to Effectiveness of Plan") have been satisfied or waived and (b) no stay of the Confirmation Order is in effect.

(ww)    "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(xx)    "Equity Interest" means the interests of any holder of an equity security of any Debtor represented by any issued and outstanding shares of common stock or preferred stock, or any membership interest, partnership interest or other instrument evidencing a present ownership interest in such Debtor, including any option, warrant, or right, contractual or otherwise, to acquire any such interest.

(yy)    "Estate" means the estate of a Debtor created under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

(zz)    "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

(aaa)    "Final Order" means an order or judgment entered by a court of competent jurisdiction, including the Bankruptcy Court, which has not been reversed, modified, amended, vacated, or stayed, and as to which: (i) the time to appeal or seek review, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and as to which no

appeal, review, petition for certiorari, or other proceedings for a new trial, re-argument, or rehearing shall then be pending; or (ii) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure (or the analogous rule under applicable state law), or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

(bbb)   "General Unsecured Claim" means a Claim as of the Petition Date that is not an Administrative Expense Claim (including, a Professional Claim), a Priority Tax Claim, a Priority Claim, or any Secured Claim.

(ccc)   "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

(ddd)   "Impaired" means, with respect to any Class of Claims or Equity Interests, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(eee)   "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time, and any applicable rulings, Treasury Regulations, judicial decisions, and notices, announcements, and other releases of the United States.

(fff)    "Lien" means any: (i) judicial lien contemplated in section 101(36) of the Bankruptcy Code; (ii) mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by section 101(37) of the Bankruptcy Code; (iii) security interest contemplated in section 101(51) of the Bankruptcy Code; (iv) statutory lien contemplated in section 101(53) of the Bankruptcy Code; and (v) other lien, interest, charge or encumbrance.

(ggg)   "PDVSA" means PDVSA Petroleo, S.A.

(hhh)   "PDVSA Claims" means all of the Claims of PDVSA, whether asserted or unasserted, against any Debtor, including but not limited to the judgment recorded at *PDVSA Petroleo, S.A., v. Trigeant, LTD.,* 12-mc-472 (S.D. Tex. 2012).

(iii)    "Person" means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organizations, financial institution government or any political subdivision thereof, or any other entity (as defined in section 101(15) of the Bankruptcy Code) or group.

(jjj)    "Petition Date" means August 25, 2014 for Holdings and LLC, and September 15, 2014, for Trigeant, each of the foregoing is the date on which each Debtor commenced its Chapter 11 Case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

(kkk)   "Plan" has the meaning set forth in the preamble hereof.

(lll)   "Plan Documents" means all documents that aid in effectuating the Plan, including, without limitation, the APA, that certain Escrow Agreement dated September 16, 2014 (attached as Exhibit C to the Plan Support Agreement), that certain Equity Commitment Letter dated September 16, 2014 (attached as Exhibit D to the Plan Support Agreement), the Plan Support Agreement, all other addenda, exhibits, schedules, and the Plan Supplement, which documents (each as may be amended, modified or supplemented from time to time) shall be in form and substance acceptable to the Plan Proponents and the Buyer.

(mmm)"Plan Proponents" has the meaning set forth in the preamble hereof.

(nnn)   "Plan Supplement" means the compilation of documents and forms of documents, schedules and exhibits, each in form and substance reasonably acceptable to the Debtors and the Plan Proponents, to be filed on or before the date that is seven (7) days prior to the first day set for consideration of confirmation of this Plan, and which may be amended from time to time prior to the Confirmation Date with the consent of the Buyer.

(ooo)   "Plan Support Agreement" means the Plan Support Agreement attached hereto as Exhibit 1.2 (ooo).

(ppp)   "Prime Rate" means the prime rate of interest as published in *The Wall Street Journal* on the Effective Date of the Plan.

(qqq)   "Priority Claim" means any Claim to the extent that it is of the kind described in, and entitled to priority under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim and a Priority Tax Claim.

(rrr)   "Priority Tax Claim" means an unsecured Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

(sss)   "Professional" means any professional employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

(ttt)   "Professional Claim" means a Claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 Cases.

(uuu)   "Pro Rata Share" means with respect to Allowed Claims or Allowed Equity Interests, the ratio (expressed as a percentage) of (a) the amount of an Allowed Claim or Allowed Equity Interest in the Class to (b) the aggregate amount of the sum of (i) all Allowed Claims or Allowed Equity Interests in the same Class and (ii) the aggregate maximum allowable amount of all Disputed Claims or Disputed Equity Interests in the same Class for which a reserve must be established under the Plan.

(vvv)   "Purchased Assets" means Purchased Assets as defined in the APA.

(www) "Purchase Price" means One Hundred Million Dollars ($100,000,000), plus the Assumed Liabilities (as defined in the APA) to be paid by the Buyer under the APA, as adjusted by the terms of the APA.

(xxx)    "Record Date" means the date to be established by the Bankruptcy Court for purposes of determining those holders of Allowed Claims that are entitled to vote to accept or reject the Plan.

(yyy)    "Related Persons" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of the respective current and former officers, directors, principals, employees, shareholders, members, managers, management companies, advisory board members, partners, limited partners, general partners, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and any Person claiming by or through any of them, including heirs, executors, estates, servants, and nominees.

(zzz)    "Released Parties" means, collectively, the Debtors, the Reorganized Debtors, the Buyer, and the DIP Lender and, in each case, the term "Released Parties" shall include the respective Related Persons of each of the foregoing Entities.

(aaaa)    "Reorganized Debtors" means the Debtors, as reorganized as of the Effective Date in accordance with the Plan, and their successors.

(bbbb)   "Schedules" means each of the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the Clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007 filed on September 15 and 16, 2014, (as the case may be), as they have been or may be amended or supplemented from time to time through the Effective Date in accordance with Bankruptcy Rule 1009.

(cccc)   "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule to be included in the Plan Supplement and identifying (i) the executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Buyer; and (ii) the amount of Cure Claims with respect to each executory contract or unexpired lease proposed to be assumed and assigned.

(dddd)   "Secured Claim" means any Claim: (i) secured by collateral, to the extent of the value of such collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with section 506 of the Bankruptcy Code; or (ii) in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

(eeee)   "Statutory Fees" means the fees due the United States Trustee pursuant to 28 U.S.C. § 1930.

(ffff)    "Transaction" means the sale and other transactions contemplated by the APA.

(gggg) "Unclaimed Property" means any Distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to the Plan that (i) is returned to the Reorganized Debtors or the Distribution Agent, as the case may be, as undeliverable and no appropriate forwarding address is received within the later of (a) 90 days after the Effective Date and (b) 90 days after such attempted Distribution by the Reorganized Debtors or the Distribution Agent, as the case may be, is made to such holder, or (ii) in the case of a Distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made within such 90-day period. The Debtors, the Reorganized Debtors, and the Distribution Agent, as the case may be, are under no affirmative obligation to attempt to locate any holder of an Allowed Claim and may rely upon the procedure set forth in <u>Section 7.5</u> herein ("<u>Delivery of Distributions</u>").

(hhhh) "Unimpaired" means, with respect to a Class of Claims, a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

(iiii) "Unliquidated Claim" means any claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise.

(jjjj) "U.S. Trustee" or "United States Trustee" shall mean the Office of the United States Trustee, 51 S.W. 1st Avenue, Suite 1204, Miami, FL 33130, Attn: Heidi A. Feinman.

1.3. **_Interpretation_.** For purposes of the Plan: (i) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (iii) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of, or to, the Plan; (iv) the words "herein", "hereof" and "hereto" and others of similar import refer to the Plan in their entirety rather than to a particular portion of the Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vi) any term used herein that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, unless the context shall otherwise require; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply; and (viii) wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.

1.4. **_Exhibits_.** All exhibits to the Plan are annexed hereto. The Debtors reserve the right to amend the exhibits.

# ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, DIP LOAN CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

2.1.    ***Payment of Allowed Administrative Expense Claims; Administrative Expense Claims Bar Date***.    Each holder of an Allowed Administrative Expense Claim (including Professional Claims) shall, in full satisfaction, settlement, discharge and release thereof, and in exchange thereof, be paid the Allowed amount of its Administrative Expense Claim, in full, in Cash, on the earlier of: (i) the Effective Date or five (5) Business Days after the date of a Final Order allowing such Administrative Expense Claim (or as soon as practicable thereafter); (ii) for Allowed Administrative Expense Claims that represent liabilities incurred by any Debtor in the ordinary course of business after the Petition Date, the date on which each such Claim becomes due in the ordinary course of the applicable Debtor's business and in accordance with the terms and conditions of any agreement relating thereto; or (iii) at such later date or upon such other less favorable terms as may be mutually agreed upon between each such Creditor entitled to payment of an Allowed Administrative Expense Claim and the applicable Reorganized Debtor.

With the exception of Professionals seeking the allowance and payment of Professional Claims, all requests for payment of Administrative Expense Claims shall be filed by the Administrative Expense Claims Bar Date established by the Bankruptcy Court; and if such requests for payment of Administrative Expense Claims are not so timely filed, the Claims will be Disallowed automatically and deemed forever barred and the holders of such Claims shall be forever barred, estopped and enjoined from asserting such Claims in any manner against any Debtor, any Estate or the Reorganized Debtors, and without the need for any objection by the Debtor or the Reorganized Debtor, as the case may be, and without any further notice or action, order or approval of the Bankruptcy Court.

2.2.    ***Professional Claims Bar Date***.    All requests for final allowances of Professional Claims shall be filed by the Bar Date for Professional Claims established by the Bankruptcy Court.

2.3.    ***DIP Loan Claims***.    All DIP Loan Claims shall be Allowed, and, on the Effective Date, each Holder of an Allowed DIP Loan Claim shall receive, from the Buyer, (i) payment in full in Cash of such Allowed DIP Loan Claim in full and final satisfaction thereof other than the obligations under the indemnity and other provisions of the DIP Note that by their terms survive the termination of the DIP Note or (ii) such other treatment as to which the Debtor and the Holder of such Allowed DIP Loan Claim may agree in writing.  As set forth in the APA, the Purchase Price payable to Trigeant shall be reduced by the amount paid by the Buyer on account of the Allowed DIP Loan Claims.  Also on the Effective Date, all commitments under the DIP Note shall terminate.

2.4.    ***Priority Tax Claims***.    Each holder of an Allowed Priority Tax Claim shall, in full satisfaction, settlement, discharge and release thereof, and in exchange thereof, be paid the Allowed amount of its Priority Tax Claim, in full, in Cash, including statutory interest, on the later of: (i) the Effective Date (or as soon as practicable thereafter) or five (5) Business Days after the date of a Final Order allowing such Priority Tax Claim; or (ii) upon such other dates and

terms as may be agreed upon by the holder of any such Allowed Priority Tax Claim and the Reorganized Debtor.

2.5. ***U.S. Trustee; Claims for Statutory Fees; Quarterly Reports***.  Within ten (10) days of the Confirmation Date, the Reorganized Debtors shall pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) for the relevant period and provide an appropriate affidavit indicating cash disbursements for the relevant period.  Until the earlier of the closing of the Chapter 11 Cases by the issuance of a final decree by the Bankruptcy Court, or upon entry of an order of the Bankruptcy Court dismissing the applicable Chapter 11 Case, or converting the applicable Chapter 11 Case to another chapter under the Bankruptcy Code, and notwithstanding anything contained herein to the contrary, the Reorganized Debtors shall (i) pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. § 1930(a)(6) and (ii) within 45 days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the U.S. Trustee quarterly reports and affidavits setting forth all receipts and disbursements of the Reorganized Debtors as required by the U.S. Trustee guidelines.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1. ***Generally***.  All Claims and Equity Interests, except Administrative Expense Claims (including Professional Claims), DIP Loan Claims, Priority Tax Claims and Claims for Statutory Fees, are placed in Classes as summarized below in Section 3.2 ("Summary") and described in Article IV hereof ("Impairment and Treatment of Claims and Equity Interests").  A Claim or Equity Interest is placed in a particular Class only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date, and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.  For purposes of Distributions under the Plan, Claims against LLC and Holdings are classified and treated in the same Class and will receive the same Distributions under the Plan.

3.2. ***Summary***.  The following table designates the Classes of Claims against and Equity Interests in each Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan and (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

| CLASS | DESIGNATION | STATUS | ENTITLED TO VOTE |
|---|---|---|---|
| Class 1 | Priority Claims | Unimpaired | No; Deemed to Accept the Plan |
| Class 2 | Disputed Secured Claim of BTB | Unimpaired | No; Deemed to Accept the Plan |
| Class 3 | Secured Claim of PDVSA | Unimpaired | No; Deemed to Accept the Plan |
| Class 4 | Miscellaneous Secured Claims | Unimpaired | No; Deemed to Accept the Plan |
| Class 5 | General Unsecured Claims against Trigeant | Unimpaired | No; Deemed to Accept the Plan |
| Class 6 | Equity Interests in Trigeant | Unimpaired | No; Deemed to Accept the Plan |
| Class 7 | Claims Against LLC and Holdings | Unimpaired | No; Deemed to Accept the Plan |
| Class 8 | Equity Interests in LLC | Unimpaired | No; Deemed to Accept the Plan |
| Class 9 | Equity Interests in Holdings | Unimpaired | No; Deemed to Accept the Plan |

## ARTICLE IV

## IMPAIRMENT AND TREATMENT
## OF CLAIMS AND EQUITY INTERESTS

4.1.    **_Class 1_**.  _Priority Claims_.

(a)    _Classification_.  Class 1 consists of the Allowed Priority Claims.

(b)    _Treatment_.  Each holder of an Allowed Priority Claim shall be paid in full, in Cash, on the later of the Effective Date or as soon as practicable after the date on which such Priority Claim becomes Allowed, in full settlement, satisfaction, release and discharge of an Allowed Priority Claim.

(c)    _Voting_.  Class 1 is Unimpaired.  The holders of Claims in Class 1 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.2.    **_Class 2_**.  _Disputed Secured Claim of BTB_.

(a)    _Classification_.  Class 2 consists of the Disputed Secured Claim of BTB (or any successor holder of such Claim), including Claims arising from or relating to the Am Cap Debt (the "Class 2 Claim").

(b)    _Treatment_.  The Class 2 Claim is Disputed.  If the Class 2 Claim is Allowed by Final Order, the holder of the Class 2 Claim shall receive Cash in an amount equal to the Allowed Amount of the Class 2 Claim plus interest at the applicable contract rate.  Until such

14

time as the Class 2 Claim becomes an Allowed Claim, the holder of the Class 2 Claim shall receive no distributions under this Plan.  On motion of the Debtors at or before the Confirmation Hearing, the Bankruptcy Court shall determine the amount of Cash to be deposited in the Disputed Claims Reserves on the Effective Date in an amount sufficient to pay the Class 2 Claim in full to the extent it is Allowed.  The Reorganized Debtors, shall retain the reserve until the Class 2 Claim is Allowed, or pending further order of the Bankruptcy Court.  If and to the extent the Class 2 Claim becomes an Allowed Claim, the holder of the Class 2 Claim shall receive Cash from the Disputed Claims Reserve in the amount of its Allowed Claim.

(c)     *Voting*.  Class 2 is Unimpaired.  The holders of Claims in Class 2 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.3.     **_Class 3_.**  *Claim of PDVSA*.

(a)     *Classification*.  Class 3 consists of the Claims (including Secured Claims) held by PDVSA ("Class 3 Claims").

(b)     *Treatment*.  On the Effective Date, or as soon thereafter as practicable, the holder of the Class 3 Claims shall receive Cash (a) in such amount as the holder of the Class 3 Claims and the Debtors may agree, or (b) in such amount as the Bankruptcy Court determines by Final Order; underline, however, that if all or any portion of the Class 3 Claims, or the right to receive all or any portion of the Distributions on account of the Class 3 Claims, have been assigned to BTB, Harry Sargeant III ("Harry III"), or any entity owned, controlled or affiliated with Harry III, the holder of the Class 3 Claims shall receive no Distributions on account of such Class 3 Claims until further order of the Court Allowing the Class 3 Claims.

The Debtors believe that BTB and PDVSA have entered into a settlement agreement with respect to litigation which involves them and Trigeant.  The Debtors intend to conduct discovery regarding the agreement(s) between PDVSA and BTB.  Until the discovery is concluded, the Debtors or Reorganized Debtors shall reserve for the full amount of the Class 3 Claims, plus interest at the applicable judgment rate from and after the Effective Date.  On motion of the Debtors at or before the Confirmation Hearing, the Bankruptcy Court shall determine the amount of Cash to be deposited in the Disputed Claims Reserves on the Effective Date in an amount sufficient to pay the Class 3 Claims in full to the extent they are Allowed.  The Reorganized Debtors shall retain the reserve until the Class 3 Claims are Allowed or pending further order of the Bankruptcy Court.  If and to the extent the Class 3 Claims become Allowed Claims, the holders of the Class 3 Claims shall receive Cash from the Disputed Claims Reserve in the amount of their Allowed Claims.

(c)     *Voting*.  Class 3 is Unimpaired.  The holders of Claims in Class 3 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.4. **_Class 4_**. _Miscellaneous Secured Claims Against Trigeant_

(a) _Classification_. Class 4 consists of the miscellaneous Allowed Secured Claims that are not otherwise provided for in Classes 1-3, including, without limitation, the claims of Nueces County Tax Collector and Texas Asphalt Refining Company, LLC (the "Class 4 Claims").

(b) _Treatment_. On the Effective Date, or as soon thereafter as practicable, each holder of a Class 4 Claim, except to the extent that the holder of such Claim agrees to a less favorable treatment, shall receive, on account of its Claim against Trigeant, the following Distributions, in full settlement, satisfaction, release and discharge of its Claim:

(i) 100% of the Allowed Class 4 Claim paid in Cash, with interest at the applicable contract or statutory rate (if any) and otherwise the Prime Rate or any such lower interest rate as permitted by applicable law, on the Effective Date or as soon as practicable thereafter.

(ii) If a Class 4 Claim is Disputed, then on the Effective Date, the Distribution to which such Disputed Class 4 Claim would be entitled if it were Allowed at such time shall be deposited in the Disputed Claims Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtor from the Disputed Claims Reserve with interest at the Prime Rate.

(c) _Voting_. Class 4 is Unimpaired. The holders of Claims in Class 4 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.5. **_Class 5_**. _General Unsecured Claims Against Trigeant_

(a) _Classification_. Class 5 consists of the Allowed General Unsecured Claims.

(b) _Treatment_. On the Effective Date, or as soon thereafter as practicable, each holder of an Allowed General Unsecured Claim, except to the extent that the holder of such Claim agrees to a less favorable treatment, shall receive, on account of its Claim against Trigeant, the following Distributions, in full settlement, satisfaction, release and discharge of an Allowed General Unsecured Claim:

(i) 100% of the Allowed Class 5 Claim paid in Cash, with interest at the applicable contract or statutory rate (if any) and otherwise the Prime Rate, on the Effective Date or as soon as practicable thereafter.

(ii) If a Class 5 Claim is Disputed, then on the Effective Date, the Distribution to which such Disputed Class 5 Claim would be entitled if it were Allowed at such time shall be deposited in the Disputed Claims Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtor from the Disputed Claims Reserve with interest at the Prime Rate.

(c)    *Voting*.  Class 5 is Unimpaired.  The holders of Claims in Class 5 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.6.    **_Class 6_**.  *Equity Interests in Trigeant*.

(a)    *Classification*.  Class 6 consists of Equity Interests in Trigeant.

(b)    *Treatment*.  Any Cash remaining after payment of Classes 1-5 as set forth in this Plan shall be distributed to the holders of Equity Interests in Trigeant for payment to Class 6, which consists of the Claims against LLC and Holdings, with the excess to be distributed to Class 7, which consists of the Equity Interests in LLC.  The holders of Class 6 Equity Interests shall also retain their Interests in Trigeant.

(c)    *Voting*.  Class 6 is Unimpaired.  As Plan Proponents, the holders of Equity Interests in Class 6 are conclusively deemed to have accepted the Plan.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

4.7.    **_Class 7_**.  *Claims against LLC and Holdings*

(a)    *Classification*.  Class 7 consists of all Allowed Claims against LLC and Holdings.

(b)    *Treatment*.  On the Effective Date, or as soon thereafter as practicable, each holder of an Allowed Class 7 Claim, except to the extent that the holder of such Claim agrees to a less favorable treatment, shall receive, on account of its Claim against LLC or Holdings, the following Distributions, in full settlement, satisfaction, release and discharge of such Claim:

(i)    100% of the Allowed Class 7 Claim paid in Cash, with interest at the Prime Rate, on the Effective Date or as soon as practicable thereafter.

(ii)    If a Class 7 Claim is Disputed, then on the Effective Date, the Distribution to which such Disputed Class 7 Claim would be entitled if it were Allowed at such time shall be deposited in the Disputed Claims Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtor from the Disputed Claims Reserve with interest at the Prime Rate.

(c)    *Voting*.  Class 7 is Unimpaired.  The holders of Claims in Class 7 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.8.    **_Class 8_**.  *Equity Interests in LLC*

(a)    *Classification*.  Class 8 consists of Equity Interests in LLC.

(b)    *Treatment*.  Any Cash remaining after payment of Classes 1-7 as set forth in this Plan shall be Distributed to the holder of Allowed Interests in Class 8.  On the Effective Date, or as soon thereafter as practicable, the holder of the Class 8 Interests will receive 100% of the available cash which shall be distributed to Class 9, which consists of the Equity Interests in

17

Holdings.  The holder of the Interests in Class 8 shall also retain such Interests in LLC as of the Effective Date.

(c)    *Voting*.  Class 8 is Unimpaired.  As a Plan Proponent, the holder of Equity Interests in Class 8 is conclusively deemed to have accepted the Plan.  Therefore, such holder is not entitled to vote to accept or reject the Plan.

4.9.    **_Class 9_**. *Equity Interests in Holdings*

(a)    *Classification*.  Class 9 consists of Equity Interests in Holdings.

(b)    *Treatment*.  On the Effective Date, or as soon thereafter as practicable, each holder of a Class 9 Interest will receive 100% of the *Pro Rata* share of the Cash received by Holdings (less amounts paid or payable to holders of Allowed Claims against Holdings), as the holder of the Interests in Class 9. If a Class 9 Interest is Disputed, then on the Effective Date, the Distribution to which such Disputed Class 9 Interest would be entitled if it were Allowed at such time shall be deposited in the Disputed Claims Reserve and held until such time as the Disputed Class 9 Interest is Allowed and thereafter paid by the Reorganized Debtor from the Disputed Claims Reserve.  The holders of Interests in Class 9 shall also retain such Interests in Holdings as of the Effective Date.

(c)    *Voting*.  Class 9 is Unimpaired.  The holders of Claims in Class 8 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

## ARTICLE V

## ACCEPTANCE, REJECTION, AMENDMENT AND REVOCATION OR WITHDRAWAL OF THE PLAN

5.1.    **_No Classes Entitled to Vote_**.  Pursuant to section 1126(f) of the Bankruptcy Code, because each Class is Unimpaired under the Plan, the holders of Allowed Interests and Claims in all Classes "are conclusively presumed to have accepted the plan, and solicitations of acceptances with respect to such class from the holders of claims or interest of such class is not required."  Accordingly, no votes shall be solicited.

5.2.    **_Nonconsensual Confirmation_**.  In the event that the Court determines that any Class is entitled to vote and such Class does not accept the Plan by the requisite statutory majority required by section 1129(a) of the Bankruptcy Code, the applicable Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) alter, amend or modify the Plan in accordance with Sections 13.1 ("Modification of the Plan").  The Debtors shall exercise the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

5.3.    **_Revocation or Withdrawal; No Admissions_**.

(a)    *Right to Revoke or Withdraw*. Subject to the provisions of the Plan Support Agreement, the Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtors.

(b)    *Effect of Withdrawal or Revocation; No Admissions*.    If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving any Debtor.

5.4.    ***Amendment of Plan Documents***.  From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan and any documents attached to such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan shall be as provided in such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan and their respective attachments.

# ARTICLE VI

# MEANS OF IMPLEMENTING THE PLAN

6.1.    ***Sale to Buyer***.  The Plan is premised upon the consummation of the Transaction contemplated by the APA on the Closing Date, on the terms and subject to the conditions of the APA, which is incorporated herein and attached hereto as Exhibit 1.2(g).  In consideration of the Purchase Price to be paid to Trigeant by the Buyer, the Buyer will purchase and acquire from Trigeant, and Trigeant will sell, convey, assign, transfer and deliver to the Buyer, all of the Purchased Assets, free and clear of all Liens, Claims, charges, or other encumbrances.

6.2.    ***Sale is Free and Clear***.  In accordance with section 363(f) of the Bankruptcy Code, the sale and transfer of the Purchased Assets contemplated by the APA, shall be free and clear of all Liens, Claims, charges or other encumbrances of every kind and nature, and free and clear of all interests in or to the Purchased Assets at law or in equity, including without limitation any and all claims of any creditor or equity holder : (i) BTB; (ii) PDVSA; (iii) any creditor of the Debtors; and (iv) any equity holder of the Debtors. Any such liens, claims and encumbrances, if any and if valid, shall attach to the proceeds of the sale contemplated by the APA.

6.3.    ***Source of Funding for Plan Distributions***.  The Debtors or the Reorganized Debtors, as the case may be, will use the Purchase Price to make all required Distributions or payments to the Disputed Claim Reserve as the case may be.

6.4.    ***Section 1146 Exemption***.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any property, equity security or notes, or the creation, making, assignment, delivery or recording of any mortgage, deed of trust, instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any property of, by or in the Debtors or their Estates or Reorganized Debtors pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales and use, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall, by the Confirmation Order, be enjoined from, and directed to forego, the collection of any such tax or governmental assessment and be required to accept for filing and recording any of the

19

foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.5.      ***Corporate Action.***  All actions contemplated to be performed by the Debtors or the Reorganized Debtors pursuant to the Plan, the PSA, and/or the APA, or any corporate action to be taken by or required of the Debtors or the Reorganized Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, partners, members or managers of the Debtors or the Reorganized Debtors.  All Persons, the Reorganized Debtors, Governmental Units, title agencies, licensing agencies and offices of recordation may rely upon the authority vested in the Debtors' officers, or managers to act on the Debtors' behalf in order to effectuate the Plan and the transactions contemplated herein.

6.6.      ***Vesting of Assets in the Reorganized Debtors***.  Except as otherwise provided in the Plan, the APA or the other Plan Documents, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all property of the Estate, excluding the Purchased Assets but including the Purchase Price, shall vest in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances.  As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire, and dispose of their property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  All privileges with respect to the property of the Estate, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtors.

6.7.      ***Distributions.***  The Distributions will be made in accordance with the Plan by the Debtors or the Reorganized Debtors.

6.8.      ***Continued Corporate Existence of the Reorganized Debtors***.  Except as otherwise provided in the Plan, the Reorganized Debtors will exist after the Effective Date as reorganized, separate corporate entities or other business entity form, with all of the powers of a corporation or other business form under applicable law in the jurisdiction in which the Debtors are incorporated or otherwise formed and pursuant to their certificate of incorporation or other such formation document and bylaws or other organizational documents in effect before the Effective Date, except to the extent such certificate of incorporation or bylaws (or other formation documents in the case of a limited liability company or limited partnership) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.  Notwithstanding the above, each of the Debtors or Reorganized Debtors may change its status of incorporation or alter its corporate structure or business form (either through a merger, consolidation, restructuring, conversion, disposition, liquidation, dissolution, or otherwise) on or after the Effective Date as may be determined by the Debtors or Reorganized Debtors to be appropriate.  In each case in which the surviving, resulting, or acquiring company in any such transaction is a successor to any Debtor, such successor company shall perform the obligations of such Debtor under the Plan, if any, including, to pay or otherwise satisfy the Allowed Claims against such Debtor.

6.9.  *__Amendment of the Reorganized Debtors' Governance Documents__*.  As of the Effective Date, and without any further action by the stockholders, managers, partners, directors or members of the Debtors or Reorganized Debtors, and to the extent necessary to comply with section 1123(a)(6) of the Bankruptcy Code, the Debtors' articles of incorporation and by-laws (or analogous governance documents) shall be amended and restated, in form and substance consistent with the Plan, to provide for, among other things, such provisions, terms, and conditions necessary to comply, conform with, authorize and implement the terms, conditions, requirements, and all acts necessary to implement the Plan.  The officers, managers, partners, as the case may be of the Reorganized Debtor are authorized to file such articles of incorporation and by-laws (or analogous governance documents) with the appropriate authority(ies) without partner or manager approval or any other action.  After the Effective Date, the Reorganized Debtors may amend and/or restate their articles of incorporation and by-laws as permitted under applicable law.

6.10.  *__Directors, Officers, Partners, Members and Managers of the Reorganized Debtor__*.  Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the directors, officers, partners, members and managers, as the case may be, of the Debtors immediately prior to the Effective Date shall be deemed to be the directors, officers, partners, members and managers, as the case may be, of the Reorganized Debtors without any further action by any party.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed or will disclose, in the Plan Supplement, the identity and affiliation of any individuals proposed to serve as the initial partners, members and managers of the Reorganized Debtors.

On and after the Effective Date, the operations of the Reorganized Debtors shall continue to be the responsibility of their directors, officers, partners, members and managers, as the case may be, or as set forth in the applicable existing organizational or operational documents of the Debtors.  Each director, officer, partner, member and manager, as applicable, of the Reorganized Debtors shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the applicable articles or certificate of incorporation, operating agreement or other organizational documents of the Reorganized Debtors.

From and after the Confirmation Date, the directors, officers, partners, members and managers, as applicable, of the Debtors and the Reorganized Debtors, as the case may be, shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

6.11.  *__Effectuating Documents and Further Transactions__*.  On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtors and Buyer as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the APA.  The Debtors, the Reorganized Debtors, and any other necessary party, as applicable, shall perform all actions reasonably contemplated regarding the implementation of the Plan and the APA.  Each of the directors, officers, partners, members and managers, as the case may be, of the Debtors and the Reorganized Debtors is authorized, without the need for any further order or authority, (i) to execute, deliver, file, or record such contracts, instruments, releases, indentures, mortgages, and

other agreements or documents and take such actions as may be necessary or appropriate to implement or consummate the Plan and the APA, and (ii) to undertake any other action on behalf of the Debtors to implement or consummate the Plan and the APA. Each of the matters provided for under the Plan and the APA involving the corporate structure of the Debtors or corporate action to be taken by or required of any Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by any stockholder, creditor, or director of the Debtors.

6.12. ***Preservation of Causes of Action***. The Debtors (prior to the Effective Date) and the Reorganized Debtors (on and after the Effective Date) shall retain all Causes of Action, except for those transferred to the Buyer or released in accordance with the APA or any related agreement, document or instrument delivered in connection therewith. On the Effective Date, the Causes of Action shall be preserved and vested in the Reorganized Debtors for the benefit of the Reorganized Debtors. The Reorganized Debtors will have the right, in their sole and absolute discretion, to pursue, not pursue, enforce, file, settle, compromise, release, withdraw, arbitrate or litigate any Cause of Action without seeking any approval from the Bankruptcy Court. Any net recovery obtained by the Reorganized Debtors from Causes of Action shall be retained by the Reorganized Debtors and distributed in accordance with the terms of this Plan.

The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. **FOR PURPOSES OF PROVIDING NOTICE, THE DEBTORS STATE THAT ANY PARTY IN INTEREST THAT ENGAGED IN BUSINESS OR OTHER TRANSACTIONS WITH ANY OF THE DEBTORS PREPETITION OR THAT RECEIVED PAYMENTS FROM ANY OF THE DEBTORS PREPETITION MAY BE SUBJECT TO LITIGATION TO THE EXTENT THAT APPLICABLE BANKRUPTCY OR NON-BANKRUPTCY LAW SUPPORTS SUCH LITIGATION.** Unless otherwise covered by insurance, the Reorganized Debtors will fund the costs and expenses (including legal fees) to pursue the Causes of Action.

No Creditor or other party should rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. **ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSE OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTORS AND THE REORGANIZED DEBTORS**. Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtors to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or Reorganized Debtors do not possess or do not intend to prosecute a particular claim or Litigation Claim. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of Reorganized Debtors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe

such Cause of Action with specificity in the Plan; nor shall the Reorganized Debtors, as a result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action. Nothing in the Plan operates as a release of any Cause of Action.

The Debtors do not presently know the full extent of the Causes of Action, and all Creditors are advised that the Reorganized Debtors will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, the entry of the Confirmation Order will not act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a Released Party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

The Estates shall remain open, even if the Bankruptcy Cases shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the recoveries therefrom have been received by Reorganized Debtors.

6.13. ***Prosecution and Settlement of Causes of Action***. The Reorganized Debtors (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting (*e.g.*, American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action which the Debtors had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action; provided, however, that from and after the Effective Date, the Reorganized Debtors shall be authorized to compromise and settle any Cause of Action or objection to a Claim upon approval by the Bankruptcy Court after notice and a hearing.

## ARTICLE VII

## DISTRIBUTIONS

7.1. ***Manner of Distributions Under the Plan***. Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Debtors or the Reorganized Debtors (or their respective agent(s)), as applicable, into the United States mail. At the option of the Debtors or the Reorganized Debtors, as the case may be, any Cash payment to be made pursuant to the Plan shall be made, at the election of the Debtors or the Reorganized Debtors, as the case may be, by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim and the Debtors or the Reorganized Debtors. Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

7.2. ***Timing of Distributions***. Any Distribution to be made by any Debtor or the Reorganized Debtors (or their respective agent(s)), as the case may be, pursuant to the Plan shall be deemed to have been timely made if made within ten (10) days after the time therefore specified in the Plan.

7.3.     **_Entity Making Distributions_**.   Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims shall be made, and the responsibility for holding the Disputed Claims Reserve will be, by the Debtors, if before the Effective Date, or the Reorganized Debtors, if on or after the Effective Date.   The Debtors and the Reorganized Debtors shall not be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Bankruptcy Court.

7.4.     **_Record Date_**.  As of the close of business on the Record Date, the various transfer and claims registers for each of the Classes of Claims as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims.   The Debtors and the Reorganized Debtors, as applicable, shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Record Date.   The Debtors and the Reorganized Debtors, as applicable, shall be entitled to recognize and deal hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable.

7.5.     **_Delivery of Distributions_**.  Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims shall be made, (i) at the addresses set forth on any proof of claim filed by such holder (or at the last known addresses of such holder if no motion requesting payment or proof of claim is filed or the Debtors, or Reorganized Debtors, as the case may be, have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes filed with the Bankruptcy Court and served on the Debtors or the Reorganized Debtors, as the case may be, by such holder after the date of any related proof of claim, or (iii) at the addresses reflected in the Schedules if no proof of claim has been filed and no written notice of address change has been filed by such holder with the Bankruptcy Court and served on the Debtors or the Reorganized Debtors, as the case may be.   Nothing set forth herein will be deemed a waiver of the Debtors' statutory or common law setoff rights.

7.6.     **_No Interest Unless Otherwise Provided_**.   Other than to the extent allowed by the Bankruptcy Court, in accordance with applicable law, or as otherwise provided in the Plan, no interest shall accrue or be paid on any Claim or Interest.

7.7.     **_De Minimis Distributions_**.   No Distribution of less than fifty ($50) dollars shall be made to any holder of an Allowed Claim.   Such undistributed amount will be retained by the Reorganized Debtors to be distributed in Pro Rata Shares to holders of Allowed Interests in Class 6, 8, or 9.

7.8.     **_Fractional Cents_**.   Notwithstanding any other provisions of the Plan to the contrary, no fractional cents will be made under the Plan.   Any Distribution or payments will be issued to holders in whole cents (rounded to the nearest whole cent when and as necessary).

7.9.     **_Taxpayer Identification Number_**.   The Reorganized Debtors may require any holder with an Allowed Claim entitled to a Distribution hereunder to furnish its, his or her employer or taxpayer identification number (the "TIN") assigned by the Internal Revenue Service.   Any Distribution hereunder may be conditioned on the receipt of such TIN.   If any such holder entitled to a Distribution hereunder fails to provide a requested TIN within ninety (90) days after the request thereof, then such failure shall be deemed to be a waiver of such holder's interest in any future Distributions, including the right to receive any future Distributions.

7.10. **_Compliance with Tax Requirements_**. In connection with the Plan, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, if applicable, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the reporting of, and the satisfaction and payment of any tax obligations imposed by, any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

7.11. **_Effect of Pre-Confirmation Distributions_**. Nothing in the Plan shall be deemed to entitle the holder of a Claim that received, prior to the Effective Date, full or partial payment of such holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court (including, but not limited to any orders approving critical vendor motions filed by the Debtors), provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtors or the Reorganized Debtors to such holder under the Plan.

7.12. **_Setoffs and Recoupments_**. The Debtors, if before the Effective Date, or the Reorganized Debtors, if on or after the Effective Date, may, to the extent permitted by sections 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Causes of Action of any nature whatsoever that the Debtors or their Estates may have against the holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors or their Estates of any right of setoff or recoupment that the Debtors or their Estates may have against the holder of such Claim, nor of any other Cause of Action.

7.13. **_Distributions in Satisfaction; Allocation_**. Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Interests in the Debtors and their Estates, whether known or unknown, that arose or existed prior to the Effective Date. Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

7.14. **_Unclaimed Property_**. Unclaimed Property shall vest in the Reorganized Debtors pursuant to Article XI hereof ("Effect of Confirmation").

## ARTICLE VIII

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

8.1. **_Objections to Claims; Prosecution of Disputed Claims_**. Before the Effective Date, any Debtor or any other party in interest will be entitled to object to any Claim (in whole or in part) appearing on the Schedules, filed in the Chapter 11 Cases or estimated by the Bankruptcy Court with respect to which the Debtors dispute liability in whole or in part. After the Effective Date, only the Reorganized Debtors shall be entitled to object to the allowance of any Claim appearing on the Schedules, filed in the Chapter 11 Cases or estimated by the

Bankruptcy Court with respect to which the Reorganized Debtors dispute liability in whole or in part.  All objections that are filed and prosecuted by the Debtors or the Reorganized Debtors, as the case may be, as provided herein shall be litigated to Final Order or settled.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Debtors or the Reorganized Debtors, as the case may be, to Claims shall be served and filed no later than one-hundred and eighty (180) days after the Effective Date, or such other deadline established by separate order of the Bankruptcy Court.

8.2.    ***Administration of Disputed Claims; Disputed Claims Reserve***.

(a)    No Distribution of Disputed Claims.  Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

(b)    Estimates in Aid of the Plan.  In determining the amount of Distributions to be made hereunder to holders of Allowed Claims, the appropriate Distributions required by the Plan shall be made according to estimates and subject to the provisions of the Plan.  For purposes of effectuating the provisions of this section and the Distributions to holders of Allowed Claims, the Bankruptcy Court may set, fix or liquidate the amount of Disputed Claims, including any applicable interest, pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated will be deemed the amounts of the Disputed Claim, including any applicable interest, for purposes of Distribution under this Amended Plan.  In lieu of fixing or liquidating the amount of any Disputed Claim, the Debtors or Reorganized Debtors, as the case may be, may request that the Bankruptcy Court determine the amount to be reserved for such Disputed Claim, including any applicable interest, or such amount may be fixed by agreement in writing between the Debtors or the Reorganized Debtors, as the case may be, and the holder of a Disputed Claim.

(c)    Disputed Claims Reserve.  To protect the interests of holders of Disputed Claims in any Class, the Reorganized Debtors shall establish a Disputed Claims Reserve.  On the Effective Date, the Reorganized Debtors shall fund the Disputed Claims Reserve with Cash in an amount that represents the Cash that would otherwise be distributed to the holder of each such Disputed Claim on the Effective Date (plus interest to the extent provided in the Plan) if (i) such Claim was Allowed in the amount set forth in the Schedules, on the holder's proof of claim, or as estimated by the Bankruptcy Court, and (ii) was entitled to receive the particular Distribution as described in Article IV hereto ("Impairment and Treatment of Claims and Equity Interests").

(d)    Administration of Disputed Claims that Become Allowed Claims.  As soon as practicable after a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim shall receive from the Disputed Claims Reserve a Distribution in an amount equal to the Distribution that such holder would have received had such Disputed Claim been an Allowed Claim on the Effective Date.  Distributions to each holder of a Disputed Claim, to the extent that such Claim becomes an Allowed Claim, shall be made in accordance with the Class of Claims to which such Claim belongs.

(e)    Disallowed Claims.  When a Disputed Claim or any portion thereof becomes a Disallowed Claim, the Distribution(s) to which such holder of a Disallowed

Claim would be entitled shall be distributed, at the time of final Distributions, to the holders of Allowed Interests to the extent that all other Allowed Claims have already been satisfied or reserved for in accordance with the Plan.

8.3.    _**Estimation**_.    The Debtors or, following the Effective Date, the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All objection, estimation and Claim resolution procedures are intended to be cumulative and not exclusive of one another.

8.4.    _**Disallowance of Claims**_.    Under section 502(d) of the Bankruptcy Code, any Claim asserted by a Creditor shall be Disallowed in its entirety if such Creditor has received a transfer that is voidable under the Bankruptcy Code and has failed to repay such transfer.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1.    _**General Treatment: Rejected if not Previously Assumed**_.    Thirty (30) days after the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123(b)(2) of the Bankruptcy Code as of the Effective Date, unless any such executory contract or unexpired lease: (i) has been previously subject to a Final Order of the Bankruptcy Court authorizing assumption or rejection, as the case may be, entered prior to thirty (30) days after the Effective Date; (ii) is the subject of a motion to assume or reject pending as of thirty (30) days after the Effective Date; or (iii) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases which will be an Exhibit to the Plan Supplement to be filed by the Debtors.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions or rejections pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code as of the Effective Date.

9.2.    _**Bar to Claims Arising from Rejection, Termination or Expiration**_.    Claims arising from the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Section 9.1 hereof ("General Treatment; Rejected if not Previously Assumed") or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after: (a) _the Confirmation Date_, with respect to any executory contract or unexpired lease that was terminated or expired by its own terms prior to the Confirmation Date, (b) _the date of the entry of any order of the Bankruptcy Court authorizing rejection_, with respect to any executory contract or unexpired lease rejected by the Debtors, or (c) _the Confirmation Date_, with respect to any executory contract or unexpired lease that is

27

deemed rejected pursuant to Section 9.1 hereof ("General Treatment; Rejected if not Previously Assumed").  Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtors, or their estates, assets, properties, or interests in property, or the Reorganized Debtors, or their estate, assets, properties, or interests in property.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided in this Section shall be treated as a Claim under Class 4 or 6, as the case may be, and shall be subject to the provisions of the treatment of Disputed Claims covered by Article VIII hereof ("Procedures for Resolving and Treating Disputed Claims").  Nothing contained herein shall be deemed an admission by the Debtors or any of them that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Reorganized Debtors of any objections to such Claim if asserted.

9.3.    ***Assumption and Assignment of Executory Contracts and Unexpired Leases.***

(a)    Assumption and Assignment of Executory Contracts and Unexpired Leases; Schedule of Assumed Executory Contracts and Unexpired Leases.  On the Effective Date, the Debtors will assume all of the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases attached as an Exhibit to the APA and/or the Plan Supplement and assign those executory contracts and unexpired leases to the Buyer.  With respect to the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors will designate a proposed Cure on the Schedule of Assumed Executory Contracts and Unexpired Leases.  Unless subject to separate motion and prior order of the Bankruptcy Court, the Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption and assignment of all of the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases attached to the Plan Supplement pursuant to sections 365(a) and 1123 of the Bankruptcy Code and the listed amount of Cure Claims.

(b)    Modifications, Amendments, Supplements, Restatements, or Other Agreements.  Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed and assigned pursuant to the Plan will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated pursuant to the Plan or separate motion and Final Order of the Bankruptcy Court.

(c)    Modification of the Schedule of Assumed Executory Contracts and Unexpired Leases.  Subject to the terms of the Plan Support Agreement, the Schedule of Assumed Executory Contracts and Unexpired Leases may be modified by the Plan Proponents to add or delete contracts and leases up to three (3) days prior to the scheduled Confirmation Hearing.

(d)    Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed.  Any and all proofs of claim relating to executory contracts or unexpired leases that have been assumed in the Chapter 11 Cases will be deemed

28

amended and superseded by the amount of Cure Claim identified in the Plan, the Confirmation Order or other order of the Bankruptcy Court authorizing assumption of executory contracts to the Debtors or the Reorganized Debtors.

(e)    <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>. With respect to each of the executory contracts or unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors will designate a proposed Cure and the assumption or assumption and assignment of such executory contract or unexpired lease will be conditioned on the disposition of all issues with respect to Cure. All Allowed Cure Claims will be satisfied by the Debtors by payment of the Cure in Cash on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as may be either ordered by the Bankruptcy Court or agreed by the Debtors and the applicable contract counter-party without any further notice to or action, order, or approval of the Bankruptcy Court. Any provisions or terms of the Debtors' executory contracts or unexpired leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure, or by an agreed-upon waiver of the Cure.

(f)    <u>Confirmation Order</u>. Entry of the Confirmation Order will constitute a finding of adequate assurance of future performance by the Buyer within the meaning of section 365 of the Bankruptcy Code. Any objections relating to adequate assurance of future performance, or any other matters relating to the assumption and assignment of executory contracts and unexpired leases (other than Cure Claim disputes) must be asserted as an objection to confirmation of the Plan. Assumption of any executory contract or unexpired lease pursuant to the Confirmation Order or other order of the Bankruptcy Court will limit the Claims of any such contract counter-party to the (i) Allowed Cure Claim and (ii) Claims for ongoing performance under the unexpired lease or executory contract by Buyer.

9.4.    ***Insurance Policies and Agreements***. Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed by the applicable Reorganized Debtor, effective as of the Effective Date. Nothing contained in this Section shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

## **ARTICLE X**

## **CONDITIONS PRECEDENT**

10.1.    ***Conditions Precedent to Effectiveness of Plan***. The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived, in whole or in part, by the Plan Proponents and the Buyer, except as set forth otherwise below:

(a)    the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponents and Buyer, and such Confirmation Order shall be in effect, shall not be the subject of a stay, shall not have been reversed, modified (except with the consent of the Plan Proponents and the Buyer) or vacated in whole or in part, and, unless

waived by Buyer,  shall have become a Final Order;

>    (b)    the Bankruptcy Court shall have entered an order setting confirmation of the Plan, without the need for a disclosure statement;

>    (c)    all documents, instruments and agreements provided for hereunder or necessary to implement the Plan and the Transaction, except for those contemplated to be executed post-Effective Date, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby, in form and substance satisfactory to the Plan Proponents and the Buyer;

>    (d)    the Bankruptcy Court shall have entered an order (which may be the Confirmation Order) approving the APA, authorizing Debtors or Reorganized Debtors, as applicable, to enter into and perform under APA, and finding that the Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code, and such order shall be in effect, shall not be the subject of a stay, shall not have been reversed, modified (except with the consent of the Plan Proponents and the Buyer) or vacated in whole or in part, and, unless waived by Buyer, shall have become a Final Order;

>    (e)    the Bankruptcy Court shall have entered an order (which may be the Confirmation Order, or an order in the BTB Bankruptcy Case (as defined in the Plan Support Agreement)) determining and providing that Trigeant owns all of the right, title and interest in, to and under each of the Bay/Berry Agreements (as defined below) and may assign all of such rights, title land interest to the Buyer, and such order shall be in effect, shall not be the subject of a stay, shall not have been reversed, modified (except with the consent of the Plan Proponents and the Buyer) or vacated in whole or in part, and, unless waived by Buyer, shall have become a Final Order;and Trigeant shall have assigned and the Buyer shall have assumed all of the Bay/Berry Agreements),or the Bay/Berry Agreements shall have been replaced at the Closing of the APA by new agreements among the Buyer and a member of the Bay/Berry Group (as defined in the APA) on terms approved by the Buyer, provided, that such replacement agreements shall not (A) impose any Liability upon Trigeant and (B) be, in the aggregate, materially less beneficial to the Buyer than the existing Bay/Berry Agreements are to Trigeant;

>    (f)    all conditions to the effectiveness of the APA and the Plan Support Agreement must have been satisfied or waived in accordance with their terms and all pre-closing deliverables thereunder shall have been provided;

>    (g)    Consistent with the APA, all of the crude oil and oil related products that BTB owns that are still in the Debtors' storage tanks (the "Heels") shall have been removed.

>    (h)    the APA and the Plan Support Agreement shall be in full force and effect and shall not have been terminated; and

>    (i)    no order of a court restraining the Debtors from consummating the Plan, the Plan Support Agreement or the APA shall have been entered and shall remain in effect.

Subject to the Plan Support Agreement and the APA, any waiver of a condition precedent set forth in this Section may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Plan Proponents decide that one of the foregoing conditions cannot be satisfied, and the occurrence of such condition is not waived in writing by the Plan Proponents and/or the Buyer, as applicable, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court, at which time the Plan and the Confirmation Order shall be deemed null and void.

10.2. ***Effect of Failure of Conditions to Effective Date***. If all the conditions to effectiveness provided for in: (i) this Plan, (ii) the APA, and (iii) the PSA have not been satisfied or duly waived on or before the earliest outside date (or by such later date as is agreed to by the Plan Proponents and Buyer) provided for in: (i) this Plan, (ii) the APA, (iii) the Confirmation Order, and (iv) the PSA; and the Effective Date has not occurred on or before the earliest outside date (or by such later date as is agreed to by the Plan Proponents and Buyer) provided for in: (i) this Plan, (ii) the APA, (iii) the Confirmation Order, and (iv) the PSA, then, upon motion by the Debtors made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order will not be vacated if each of the conditions to consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section, the Plan will be null and void in all respects, and (i) no Distributions under the Plan shall be made, (ii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors.

10.3. ***Notice of Confirmation of the Plan***. Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

## ARTICLE XI

## EFFECT OF CONFIRMATION

11.1. ***Vesting of Assets***. Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors, not sold and conveyed to the Buyer pursuant to the APA, shall vest in the Reorganized Debtors as provided in Section 6.6.

11.2. ***Title to Assets; Discharge of Liabilities***. Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan, except for the assets sold to the Buyer, shall vest in the Reorganized Debtors free and clear of all Claims, Equity Interests, Liens, encumbrances, charges, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors arising prior to the Effective Date, except as may be otherwise provided in the Plan.

11.3. ***Binding Effect***. Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtors, the Reorganized Debtors,

the Buyer, and any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

11.4.   ***Discharge of Claims and Termination of Equity Interests***.   Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.   Except as provided herein or in the APA and the other Plan Documents, upon the Effective Date, all existing Claims against the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtors, their respective successors or assignees, or any of their respective assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.   Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors. Nothing in this Section should be interpreted as a discharge of the Debtors' or Reorganized Debtors' rights or obligations under the Plan.

11.5.   ***Discharge of the Debtors***.   Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan will be in complete satisfaction, discharge, and release of any and all Claims, whether known or unknown, against the Debtors or Reorganized Debtors or any of their assets or properties, regardless of whether the property has been distributed or retained pursuant to the Plan. Without limiting the generality of the foregoing, the Debtors or Reorganized Debtors will be discharged from any and all Claims and debts of the kind specified in sections 502(g), 502(h) of 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim accepted the Plan.   Except as otherwise provided in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors arising before the Effective Date.   Under section 524 of the Bankruptcy Code, the discharge granted under this section shall avoid any judgment against the Debtors at any time obtained (to the extent it relates to a discharged Claim), and operates as an injunction against the prosecution of any action against the Debtors or the Estates (to the extent such action relates to a discharged claim).   Nothing in this Section should be interpreted as a discharge of the Debtors' or Reorganized Debtors' rights or obligations under the Plan.

11.6.   ***Injunction***.   **Except as otherwise expressly provided in the Plan, all Persons who have held, hold or may hold Claims or Equity Interests and all Persons who have held, hold or may hold Claims or Causes of Action that have been released pursuant to Section 11.10 hereof ("Releases") or are subject to exculpation pursuant to Section 11.9 hereof ("Exculpation"), and all other parties in interest, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing, conducting or continuing in any manner any action or other proceeding of any kind with respect to**

any such Claim or Equity Interest, or such released or exculpated claim or cause of action, against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, (b) the enforcement, attachment, levying, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors, the Released Parties or against any of their respective property or assets, or any interest therein, with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action.  Such injunction shall be included in the Confirmation Order and shall extend to any successors of the Debtors, the Reorganized Debtors, and the Released Parties and each of their respective properties and interest in properties.

11.7.  ***Term of Injunctions or Stays***.  Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, other than injunctions issued pursuant to the Plan (including injunctions under Section 11.6 ("Injunction")), shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

11.8.  ***Injunction Against Interference With Plan of Reorganization***.  Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or the APA.

11.9.  ***Exculpation***.  Notwithstanding anything herein to the contrary, as of the Effective Date, none of (a) the Debtors or the Reorganized Debtors, (b) the Buyer, and (c) any Related Person of the Debtors, the Reorganized Debtors or the Buyer (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Petition Date in connection with, related to, or otherwise arising out of, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan or the APA, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the APA or, in each case, any contract, instrument, document or other agreement related thereto, including, but not limited to, the Plan Documents; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence; provided, further, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions.

11.10.  ***Releases***.  **As of the Effective Date, in consideration of (a) the services provided by the present directors, managers, officers, employees, agents, financial advisors,**

**attorneys, and representatives of the Debtors to the Debtors who acted in such capacities after the Petition Date; and (b) the substantial contribution of the Plan Proponents and the Buyer: (i) the Debtors or the Reorganized Debtors and (ii) each holder of a Claim or Equity Interest that votes to accept the Plan, or accepts a Distribution under the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan, shall release unconditionally and forever each Released Party from any and all Claims, demands, causes of action and the like, relating to the Debtors existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date; provided, however, that (i) nothing in this Section shall be construed as a release of any claims against any such Released Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions, and (ii) there are no personal guarantee obligations subject to the releases.**

11.11.   *__Government Releases__*.  Except as otherwise provided herein, nothing in the Plan or the Confirmation Order shall (i) effect a release of any other claim by the United States Government or any of its agencies or any state and local authority whatsoever against the Released Parties, including without limitation any claim arising under the Internal Revenue Code, securities laws, the environmental laws or any criminal laws of the United States or any state and local authority, (ii) enjoin the United States Government or any of its agencies or any state and local authority whatsoever from bringing any claim, suit, action or other proceedings against the Released Parties asserting any other liability, including without limitation any claim, suit or action arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state or local authority, and (iii) exculpate any of the Released Parties from any other liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state and local authority.

11.12.   *__Limitations on Exculpation and Releases of and Releases of Representatives__*.  Nothing in Section 11.9 ("Exculpation") or Section 11.10 ("Releases") hereof shall (i) be construed to release or exculpate any person from, or require indemnification of any Person against losses arising from, the fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of such Person, or (ii) limit the liability of the professionals of the Debtors, the Reorganized Debtors, to their respective clients pursuant to Rule 4-1.8(f) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1.   *__Retention of Jurisdiction__*.  Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(j)     to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, any documents related to the Plan, including the Plan Documents, the Confirmation Order, or in connection with the enforcement of any remedies made available hereunder;

(k)     to take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l)     to enforce the terms of any settlement approved as a part of this Plan or otherwise in the Chapter 11 Cases;

(m)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     to enter, enforce and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(o)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(p)     to hear and determine any application or motion to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(q)     to recover all property of the Estate, wherever located, which jurisdiction shall not be limited;

(r)     to hear and to determine any and all objections to or applications concerning the allowance of Claims or Equity Interests or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Equity Interest;

(s)     to hear and determine any objections to the allowance of Claims or Equity Interests arising prior to the Effective Date, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification, priority, compromise, estimation, or payment of any Claim or Equity Interest in whole or in part;

(t)     to liquidate any Disputed, contingent, or Unliquidated Claims or to estimate any Disputed Claims;

(u)     to hear and determine all motions or applications pending on the Confirmation Date for the rejection, assumption, or assumption and assignment of unexpired leases and executory contracts to which any Debtor is a party or with respect to which any

35

Debtor may be liable, and the allowance of Claims resulting therefrom or from the expiration or termination prior to the Confirmation Date of any executory contract or unexpired lease;

(v)    to hear and determine any disputes relating to the Distributions to holders of Allowed Claims as provided herein;

(w)    to hear and determine all applications for allowances of compensation and reimbursement of expenses of Professional Claims and any other fees and expenses authorized to be paid or reimbursed under the Plan;

(x)    to hear and determine any and all motions for the use, sale or lease of property pursuant to section 363 of the Bankruptcy Code and all issues related thereto, which transactions completed after the Confirmation Date shall be deemed to have been made pursuant to the Plan and therefore, exempt from recording and other taxes under section 1146 of the Bankruptcy Code;

(y)    to hear and determine any and all adversary proceedings, applications, motions, and contested or litigated matters, including the Causes of Action, and any other litigated matter, as well as any remands from any appeals, that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors after the Effective Date, including, without express or implied limitation, any claims to avoid any preferences, fraudulent transfers, or other voidable transfers, or otherwise to recover assets for the benefit of the Debtors' estates;

(z)    to enable the Reorganized Debtors to prosecute any and all Causes of Action, including proceedings which may be brought to set aside Liens or encumbrances and to recover any transfers, assets, properties or damages to which the Reorganized Debtors may be entitled under applicable provisions of the Plan, the Bankruptcy Code or any federal, state or local laws, including controversies, disputes and conflicts between the Debtors and any other party, including but not limited to any objections to Claims, motions for subordination on any grounds and claims preserved hereunder and pursuant to the Confirmation Order;

(aa)    to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against any Debtor's Estate;

(bb)    to hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors, as Debtors or Debtors in Possession, may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any request for expedited determination under section 505(b)(2) of the Bankruptcy Code);

(cc)    to enter, enforce and implement the Confirmation Order and such other orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder, including but not limited to the APA and Plan Support Agreement and their related documents;

(dd)    to issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(ee)    to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(ff)    to enter a final decree closing any and all of the Chapter 11 Cases.

12.2.    ***Abstention and Other Courts***.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, Article XII of the Plan ("Retention of Jurisdiction") shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.    ***Modification of the Plan***.  Subject to the Plan Support Agreement, the Plan may be altered, amended or modified by the Plan Proponents, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code; provided, however, that no such alterations, amendments or modifications shall be made without the consent of the Buyer; provided further, that the Plan Proponents may, with the approval of the Bankruptcy Court and without notice to holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.  A holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

13.2.    ***Rights of Action***.  Any rights, claims, or causes of action accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, and any rights to, claims or causes of action for recovery under any policies of insurance issued to or on behalf of the Debtors shall remain assets of the Debtors' estates, unless specifically sold to the Buyer or released pursuant to the APA, and, on the Effective Date, shall be transferred to and re-vest in the Reorganized Debtors.

13.3.    ***Notices***.  Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

        (1)    Berger Singerman LLP
                1450 Brickell Avenue, Suite 1900
                Miami, Florida 33131
                Attention:  Jordi Guso, Esq.
                              Isaac M. Marcushamer, Esq.
                Tel: (305) 755-9500
                Fax: (305) 714-4340

13.4.   _**Severability**_.   If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the Buyer's consent), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.5.   _**Headings**_.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

13.6.   _**Governing Law**_.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Florida, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

13.7.   _**Plan Documents**_.  All Plan Documents, including, but not limited to the exhibits and schedules to the Plan, the APA, the Plan Support Agreement, the Plan Supplement and the schedules and exhibits to the Plan Supplement, are incorporated into and are a part of the Plan as set forth in full herein.

13.8.   _**Compliance with Tax Requirements**_.  In connection with the Plan, the Debtors and the Reorganized Debtors will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements.

13.9.   **Conflict between Plan and Plan Documents**.  In the event of any conflict between the terms and provisions in this Plan and the terms and provisions in any Plan Document or any document in the Plan Supplement, the terms and provisions of the APA and the Plan Support Agreement shall control and govern.

13.10.   _**Expedited Determination of Postpetition Taxes**_.   The Debtors and the Reorganized Debtors are authorized (but not required) to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for all taxable periods (or portions thereof) from the Petition Date through (and including) the Effective Date.

13.11.   _**Time**_.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006, as amended effective December 1, 2009, shall apply.

13.12.  ***Binding Effect***.  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtors, the Reorganized Debtors, the Buyer, the holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

13.13.  ***No Res Judicata Effect***.  The  provisions of the Plan that permit the Debtors or Reorganized Debtors to enter into settlements and compromises of any Cause of Action, shall not have, and are not intended to have, any res judicata or collateral estoppel effect with respect to any Cause of Action, as the case may be, that are not otherwise treated hereunder and shall not be deemed a bar to asserting such Cause of Action, regardless of whether or to what extent such Cause of Action is specifically described herein.  Unless any of the Causes of Action are expressly waived, relinquished, exculpated, released, compromised or settled herein or by Final Order of the Bankruptcy Court, all such Causes of Action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after Confirmation or consummation of the Plan.  Furthermore, notwithstanding any provision or interpretation to the contrary, nothing herein or the Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment or bar, in whole or in part, of or to any recovery rights or any other claim, right or cause of action possessed by the Debtors prior to the Effective Date.

13.14.  ***Bankruptcy Rule 9019 Request; Impact***.   The Plan, including the Plan Supplement or other Plan Document, may provide for one or more compromises or settlements.  Pursuant to Bankruptcy Rule 9019, the Debtors hereby request approval of all compromises and settlements included in the Plan, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of any such compromise or settlement.

13.15.  ***Cramdown***.  This section shall constitute the Plan Proponents' request, pursuant to section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code may not be met.

13.16.  ***Successors and Assigns.***   The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

Dated: September 16, 2014


Respectfully Submitted,


**TRIGEANT, LTD.**
　　　　By its general partner, Trigeant, LLC



By:_____
Name:  Stephen Roos
Title:  Manager



**TRIGEANT, LLC**



By:_____
Name:  Stephen Roos
Title:  Manager



**TRIGEANT HOLDINGS, LLC**



By:_____
Name:  Harry Sargeant, Jr.
Title:  Manager


5899164

Dated:    September 16 , 2014

Respectfully Submitted,

**TRIGEANT, LTD.**
       By its general partner, Trigeant, LLC

By:_____
Name:  Stephen Roos
Title:  Manager


**TRIGEANT, LLC**

By:_____
Name:  Stephen Roos
Title:  Manager


**TRIGEANT HOLDINGS, LLC**

By:_____
Name:  Harry Sargeant, Jr.
Title:  Manager

_____
Harry Sargeant, Jr.

_____
Dan Sargeant

_____
James Sargeant